IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IDEXX LABORATORIES, INC. and IDEXX DISTRIBUTION, INC., | ) ) ) Civil Action No.: _____ |
| Plaintiffs, | ) ) ) ) JURY TRIAL DEMANDED |
| v. | ) ) |
| CHARLES RIVER LABORATORIES, INC. and CHARLES RIVER LABORATORIES INTERNATIONAL, INC., | ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement. Plaintiffs IDEXX Laboratories, Inc. and IDEXX Distribution, Inc. (collectively referred to herein as "IDEXX") bring this Complaint against Defendants Charles River Laboratories, Inc. and Charles River Laboratories International, Inc. (collectively referred to herein as "Charles River"), and allege as follows:

**INTRODUCTION**

1.  Plaintiff IDEXX is a global leader in the research and development of diagnostic capabilities and information management solutions for veterinary and animal care professionals. IDEXX products and services improve the efficiencies of veterinary and animal care personnel, which ultimately leads to growing revenues for the IDEXX veterinary customers and better care for the animal patients. As relates to the issues in this lawsuit, IDEXX provides health monitoring and diagnostic testing services to bioresearch customers who maintain animal (i.e., rats and mice) test subjects, including global, mid-tier, and smaller bioresearch entities, as well as academic and government laboratories.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff IDEXX Laboratories, Inc. ("ILI") is headquartered at One IDEXX Drive, Westbrook, Maine 04092.

3. Plaintiff IDEXX Distributions, Inc. ("IDI") is headquartered at One IDEXX Drive, Westbrook, Maine 04092.

4. Defendant Charles River Laboratories, Inc. ("CRL") is incorporated in Delaware and headquartered at 251 Ballardvale Street, Wilmington, Massachusetts 01887.

5. Defendant Charles River Laboratories International, Inc. ("CRLI") is incorporated in Delaware and headquartered at 251 Ballardvale Street, Wilmington, Massachusetts 01887.

6. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Charles River because CRLI and CRL are each incorporated in Delaware and because Charles River advertises, markets, sells, offers to sell, and provides the results of the infringing activities to its customers throughout the United States, including this judicial District.

8. Venue is proper in this district under 28 U.S.C. § 1400(b) and § 1391(b) and (c).

9. The claims asserted herein against CRLI and CRL arise out of "the same transaction, occurrence, or series of transactions, or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process." Further, this action will raise "questions of fact common to all defendants." As such, joinder of these Defendants is appropriate under 35 U.S.C. § 299(a)(1)-(2).

## BACKGROUND

10. Historically (i.e., prior to the 1970s), the animals used in testing labs had various unknown disease conditions. Such animals (typically rodents such as rats and mice) could harbor viruses or germs or other biological elements that exhibit an observable pathology; but many such animals harbored viruses or germs or other biological elements which did not exhibit a recognized pathology but which, nonetheless, could affect various test results. During this time, there was no systematic way to assure that animals being used in biological testing labs were free of viral and bacterial agents and other contaminants that might otherwise disrupt research operations and distort research results. Each testing lab tended to develop its own ways of dealing with the animal disease conditions that arose within its labs.

### IDEXX, RADIL, AND THE PATENTS-IN-SUIT

11. Radil Laboratories ("Radil") started in late 1960s, operating as a university facility within the University Of Missouri College Of Veterinary Medicine. Radil's goal was to create a dependable, systematic, and cost-effective means to assure that animal populations in biologic laboratories are free of viral and bacterial agents and other contaminants that might otherwise disrupt research operations and distort research results. The Radil scientists provided this service not only for the University Of Missouri College Of Veterinary Medicine but also, at a fee, for numerous third parties.

12. During the 1970s and later, Radil scientists developed and implemented numerous test formats, including Enzyme Linked Immunosorbant Assays ("ELISA"), to determine whether the pertinent animal populations were free of the viral and bacterial agents and other contaminants that might otherwise disrupt research operations and distort research results. Multiple institutions also developed assays based upon the ELISA platform around the same

time frame. Charles River, a producer of rodent models for biomedical research, used these assays for their own internal testing purposes but also, by at least the 1990s, for selling competitive testing services to third parties that included Radil's customers and potential customers.

13. In 2004, Radil developed a testing format based on Multiplex Fluorescent Immunoassay ("MFI") technology. The MFI format greatly increased testing throughput and, because it had the ability to multiplex assays, allowed for truly comprehensive health screening. However, being the first company in this field to change from the ELISA format to the MFI format was very difficult. This industry is generally very conservative, and customers do not accept new technologies easily because the consequence of even a small mistake can be catastrophic. Thus, Radil not only had to develop multiple MFI test products to identify numerous virus, bacterial, and other contaminants, but also had to conduct substantial validation work on each of the new test products in order to establish the dependable accuracy of such MFI tests. Radil's switch from ELISA to MFI first became public knowledge in about 2004. After Radil had paved the way and established the dependable accuracy of the MFI test format, Charles River subsequently began to copy Radil's efforts on MFI testing for Charles River's own internal testing purposes. By at least 2008, Charles River began selling competitive MFI-based testing services to third parties that included Radil's customers and potential customers.

14. The animal testing protocols that were commercially practiced before the present inventions required customers to either: A) (i) draw a relatively large amount of blood from the animal, (ii) isolate the serum from the cellular matter, and (iii) ship frozen serum to a central testing lab; or B) ship the animal itself to a central laboratory for testing. Such procedures were

expensive, not only because they required substantial time from specialized technicians but also because they typically required sacrificing a significant number of animals.

15. IDEXX acquired Radil in 2011.

16. In early 2012, IDEXX started investigating how to make it easier for the Radil customers to use its products and services. Through substantial investigation, research, testing, and validation, Dr. Matthew H. Myles created the inventions covered by United States Patent Nos. 8,927,298; 8,945,945; and 9,040,308 (collectively "the Patents-in-Suit").

17. Dr. Myles's inventions eliminated the need to draw substantial amounts of blood from the animal subject, and allowed customers to ship a dried whole-blood sample without isolating the serum and without freezing the sample. Further, Dr. Myles's inventions allowed the sample preparation work to be done by less skilled technicians and without sacrificing test animals.

18. IDEXX publically announced Dr. Myles's inventions on June 10, 2013, and commercially launched the Opti-Spot® product in Europe in June 2013 and in North America on July 7, 2013. Charles River knew full well about these events.

19. Dr. Myles's inventions caused a fundamental industry shift in the preferred protocols for testing laboratory rodent animal populations. Overcoming the aforementioned conservative nature of the industry, 90% of IDEXX's customers switched to the technology of the Opti-Spot® product by the end of 2014 – an incredibly swift adoption of new technology in this conservative industry.

20. On January 6, 2015, the United States Patent and Trademark Office duly and legally issued United States Letters Patent No. 8,927,298 ("the '298 Patent"), entitled "Sample Collection and Analysis," in the name of inventor Dr. Matthew H. Myles. IDEXX is the

assignee of the entire right, title, and interest in and to the '298 Patent. A true and correct copy of the '298 patent is attached as Exhibit A to this complaint.

21.     On February 3, 2015, the United States Patent and Trademark Office duly and legally issued United States Letters Patent No. 8,945,945 ("the '945 Patent"), entitled "Sample Collection and Analysis," in the name of Dr. Matthew H. Myles. IDEXX the assignee of the entire right, title, and interest in and to the '945 Patent. A true and correct copy of the patent is attached as Exhibit B to this complaint.

22.     On May 26, 2015, the United States Patent and Trademark Office duly and legally issued United States Letters Patent No. 9,040,308 ("the '308 Patent"), entitled "Sample Collection and Analysis," in the name of Dr. Matthew H. Myles. IDEXX the assignee of the entire right, title, and interest in and to the '308 Patent. A true and correct copy of the patent is attached as Exhibit C to this complaint.

## CHARLES RIVER

23.     In October 2013, several months after the IDEXX announcement of Dr. Myles's invention, Charles River announced that it was developing a competing product, which it now markets as its EZ-Spot® product, using the same methods as Dr. Myles's inventions.

24.     A substantial portion of Charles River's business revenue is derived from the production and sale of rodent research models, principally genetically and microbiologically defined purpose-bred rats and mice. The success of this portion of Charles River's business depends critically upon the ability to confirm that the animal models are free of viral and bacterial agents and other contaminants that might otherwise disrupt research operations and distort research results. On information and belief, Charles River develops the evidence that its

internal animal models are free of viral and bacterial agents and other contaminants by illegally practicing the IDEXX technology covered by the Patents-in-Suit.

25. Charles River also develops and maintains rodent populations on behalf of third party entities, including global, mid-tier, and specialized biopharmaceutical companies, as well as academic and government institutions. The success of this portion of Charles River's business depends critically upon Charles River's ability to confirm that these rodent populations are free of viral and bacterial agents and other contaminants that might otherwise disrupt research operations and distort research results, and doing so in a cost competitive manner. On information and belief, Charles River develops the evidence that these rodent populations are free of viral and bacterial agents and other contaminants by illegally practicing the IDEXX technology covered by the '298, the '945, and the '308 Patents.

26. Charles River also provides contract services to third parties, testing their rodent populations to make sure that those rodent populations are free of viral and bacterial agents and other contaminants. The success of this portion of Charles River's business depends critically upon Charles River's ability to confirm that these rodent populations are free of viral and bacterial agents and other contaminants that might otherwise disrupt research operations and distort research results, and upon doing so in a cost competitive manner. On information and belief, Charles River develops evidence that these rodent populations are free of viral and bacterial agents and other contaminants by illegally practicing the IDEXX technology of the '298, the '945, and the '308 Patents.

27. The third parties for whom Charles River illegally practices the IDEXX technology covered by the '298, the '945, and the '308 Patents include customers and potential customers of IDEXX.

28. Charles River's business goals include positioning itself as the sole-source testing laboratory for third parties or as the sole alternative-source to the third party's internal laboratory capabilities. The success of these portions of Charles River's business depends critically upon its illegal practice of the IDEXX technology invented by Dr. Myles and covered by the '298, the '945, and the '308 Patents, which Charles River is commercializing as its EZ-Spot® product.

## COUNT I
### Infringement of the '298 Patent

29. IDEXX re-alleges and incorporates paragraphs 1-28 above.

30. Without license or authorization, Charles River has been and is infringing the '298 Patent by offering, selling, using and/or providing the methods covered by the '298 Patent throughout the United States.

31. Charles River's activities infringe the '298 Patent under 35 U.S.C. §§ 271 (a).

32. Charles River's conduct not only illegally usurps IDEXX's technology embodied in the '298 Patent, but also undermines IDEXX's reputation and goodwill, such that IDEXX has no adequate remedy at law.

33. The extent of damage suffered by IDEXX and caused by Charles River is not yet known, but the damage is substantial and will be determined in the course of litigation.

34. It is apparent that Charles River will continue its infringing activities, damaging IDEXX, unless and until enjoined by this Court.

## COUNT II
### Infringement of the '945 Patent

35. IDEXX re-alleges and incorporates paragraphs 1-28 above.

36. Without license or authorization, Charles River has been and is infringing the '945 Patent by offering, selling, using and/or providing the methods covered by the '945 Patent throughout the United States.

37. Charles River's activities infringe the '945 Patent under 35 U.S.C. §§ 271 (a).

38. Charles River's conduct not only illegally usurps IDEXX's technology embodied in the '945 Patent, but also undermines IDEXX's reputation and goodwill, such that IDEXX has no adequate remedy at law.

39. The extent of damage suffered by IDEXX and caused by Charles River is not yet known, but the damage is substantial and will be determined in the course of litigation.

40. It is apparent that Charles River will continue its infringing activities, damaging IDEXX, unless and until enjoined by this Court.

### COUNT III
### Infringement of the '308 Patent

41. IDEXX re-alleges and incorporates paragraphs 1-28 above.

42. Without license or authorization, Charles River has been and is infringing the '308 Patent by offering, selling, providing and/or using the methods covered by the '308 Patent throughout the United States.

43. Charles River's activities infringe the '308 Patent under 35 U.S.C. §§ 271 (a).

44. Charles River's conduct not only illegally usurps IDEXX's technology embodied in the '308 Patent, but also undermines IDEXX's reputation and goodwill, such that IDEXX has no adequate remedy at law.

45. The extent of damage suffered by IDEXX and caused by Charles River is not yet known, but the damage is substantial and will be determined in the course of litigation.

46.     It is apparent that Charles River will continue its infringing activities, damaging IDEXX, unless and until enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, IDEXX respectfully demands the following relief for itself and against the Charles River Defendants:

(a) That this Court find and enter judgment that the Charles River Defendants have infringed each of the Patents-in-Suit;

(b) That this Court issue an injunction enjoining the Charles River Defendants and their officers, agents, servants and employees, privies, and all persons in active concert or participation with them from further infringing each of the Patents-in-Suit;

(c) That this Court ascertain and award IDEXX damages sufficient to compensate for the Charles River Defendants' infringement of each of the Patents-in-Suit; and

(d) That this Court grants such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff IDEXX demands a trial by jury on all issues so triable.

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*

| OF COUNSEL | Philip A. Rovner (#3215) |
| --- | --- |
| | Jonathan A. Choa (#5319) |
| Daniel A. Boehnen | Hercules Plaza |
| Ryan Clark | P.O. Box 951 |
| McDonnell Boehnen Hulbert & Berghoff LLP | Wilmington, DE  19899 |
| 300 South Wacker Drive | (302) 984-6000 |
| Chicago, IL 60606 | provner@potteranderson.com |
| (312) 913-0001 | jchoa@potteranderson.com |

Dated:  July 31, 2015

*Attorneys for Plaintiffs*
*IDEXX Laboratories, Inc. and IDEXX Distribution, Inc.*

1196795